UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GLENN OSKI,                                :<br>        Plaintiff,                          :<br>                                            :<br>v.                                          :<br>                                            :      No. 3:07CV1082 (WWE)<br>FEDERAL EXPRESS CORPORATION, :<br>DAVE WILSON, RUSSELL             :<br>MUSGROVE, and JOHN FORMISANO,:<br>        Defendants.                       : | |

**MEMORANDUM OF DECISION ON SUMMARY JUDGMENT**

In this action, plaintiff Glenn Oski asserts that Federal Express Corporation ("FedEx") and its agents, Dave Wilson, Russell Musgrove and John Formisano, are liable to him for defamation. Plaintiff also alleges a claim of tortious interference with his employment relationship against Wilson, Musgrove and Formisano, and a claim of promissory estoppel against FedEx.

Defendants have filed a motion for summary judgment on the complaint in its entirety. For the following reasons, the motion for summary judgment will be granted.

**BACKGROUND**

The parties have submitted statements of facts in compliance with Local Rule 56(a), along with supporting exhibits and affidavits. These materials reflect the following factual background.

Plaintiff was employed as a Senior Vehicle Technician for FedEx for approximately 14 years prior to his termination on August 4, 2006.

At the time relevant to this action, FedEx employed defendant Wilson as a Senior Fleet Manager; defendant Musgrove as Managing Director of Vehicle

1

Maintenance; and defendant Formisano as Vice President of Vehicle Maintenance.

On at least five occasions between November 2003 and June 2006, plaintiff received a copy of the FedEx Employee Handbook ("Handbook").  The Handbook acknowledgment page provided that plaintiff's rights as an employee were governed by the Employment Agreement signed in his employment application.[1]  Upon receipt of the Handbook, he signed an acknowledgment that he had received the Handbook and had read and fully understood the statements on the acknowledgment page.

Plaintiff worked with Jeff Corbin as one of two Senior Vehicle Technicians assigned to the FedEx facility at Bradley Airport.   His duties included repairing, modifying and performing preventative maintenance, and troubleshooting repairs and modifications.  Plaintiff reported to Vince Rivero, the Operations Manager for the Bradley Airport facility.

On April 12, 2006, plaintiff completed and signed a "Ground Support Equipment Preventative Maintenance Program Form" ("PM Sheet") for a FedEx deicing truck.  Plaintiff placed checkmarks next to items 1 through 13 and 17 through 25 on the sheet to indicate that he had inspected and found these items to be "OK."  According to items 1 through 13, plaintiff should have checked:  the overall condition of the deicer body; the oil level in the main engine; the cooling system level, hoses and clamps in the main

---

[1]Plaintiff's employment application, which he also signed, stated:

I ALSO AGREE THAT MY EMPLOYMENT AND COMPENSATION CAN
BE TERMINATED WITH OR WITHOUT CAUSE AND WITHOUT
NOTICE OR LIABILITY WHATSOEVER, AT ANY TIME, AT THE
OPTION OF EITHER THE COMPANY OR MYSELF.

2

engine; the main engine battery, electrolyte, cables and connectors; the lighting system; the windshield wipers; the horn; the oil level in auxiliary engine; the cooling system level, hoses and clamps in the auxiliary engine; and the battery electrolyte level, cables and connectors in the auxiliary engine.  He should also have started the main and auxiliary engines to check for smooth running, and he should have driven the truck to check for proper operation and braking.  Items 17 through 25 required plaintiff to check the following areas: under the vehicle for oil or fluid leaks; the blower for damage; the hydraulic fittings, hoses and oil lines for leakage; the aerial device turntable for smooth rotation; and the fire extinguisher system for charge condition and seals.  Plaintiff also had to verify that all hydraulic controls were operational from all control stations, and he had to grease the Hardi pump.  Plaintiff had previously filled out and signed PM Sheets for this deicer on February 8, 2006; September 7, 2005; May 16, 2005; and January 17, 2005.

On April 20, 2006, the deicer was transported from Bradley International Airport to the FedEx Airport facility located in Mobile, Alabama.  FedEx personnel at Mobile reported that the deicer was in an inoperable condition when it was received at the location.

As a result of the reported condition of the deicer, FedEx disciplined Vince Rivero, who oversaw the vehicle technicians.  Rivero challenged his discipline internally pursuant to FedEx's Guaranteed Fair Treatment Procedure ("GFTP") as set forth in the FedEx's People Manual and the Handbook. The GFTP is FedEx's internal mechanism for handling employee complaints, problems, concerns and allegations of employment discrimination.  Under the GFTP, an "employee's right to participate within the

guidelines of this process is guaranteed, although the outcome is not ensured to be in the employee's favor."

As part of Rivero's GFTP, Formisano directed Jay Tompkins (Fleet Manager) and Marc Clark (Chief Engineer) to travel to Mobile to inspect the condition of the deicer. They were not told that the inspection related to a personnel issue.[2]

Tompkins and Clark inspected the deicer for approximately 3 hours. A memorandum from Tompkins and Clark stated:

> This unit is not safe to operate due to damage to the boom assembly and extensive damage to the turret assembly. There is no evidence that the unit suffered any impact damage from the front during transportation. There is no evidence that the boom was secured by the transit company allowing it to bounce in the boom cradle. There is evidence that the unit has not had a corporate standard preventative maintenance performed in approximately 2 years.

The inspection documented "new" and "old" damage to the deicer. The "new" damage had been sustained during the move from Connecticut to Alabama because the boom of the unit had not been properly secured by the transit company. However, Tompkins and Clark noted that "old" damage, including extensive rust, had occurred prior to the transfer to Mobile.

Tompkins and Clark listed 12 deficiencies to the deicer: (1) pivot pins for boom lacked fresh grease; (2) the majority of grease fittings lacked fresh grease; (3) the oil was old and black; (4) the oil filters were rusted; (5) the wheels were rusted and not painted; (6) the fire extinguisher in the cab was out of date; (7) the rear fire suppression system had no inspection record, although it was due annually; (8) the body mounts

---

[2]At the time of the inspection, neither Tompkins nor Clark knew plaintiff.

were loose; (9) there were numerous old basket cracks and "door hinge out of place;" (10) the deicer had been "modified by adding a rear 'E' hitch;" (11) the radiator cap was missing; and (12) the starter solenoid was "recently replaced by local tech due to starter not engaging." Tompkins and Clark also took photographs of the deicer.

By affidavit, Ken Lessard, FedEx Ramp Agent at Bradley Airport, averred that he used the deicer to work on the satellite dish on the roof of the FedEx facility on April 14, 2006. He stated that he was able to start the primary and secondary engines and operate the boom using the controls. He asserted that he did not find that the deicer had as much rust on it as shown in the photographs taken by Tompkins and Clark. He also noted that some of the "old" damage listed by Tompkins and Clark is inconsistent with his observations on April 14, 2006.

Deliberate falsification of company documents is a "Discharge Offense" under FedEx's Acceptable Conduct Policy. At the time, termination from employment was mandatory for falsification of documents.

The investigation into plaintiff's conduct was assigned to Wilson, who had not met plaintiff in person prior to the investigation. As part of the investigation, Wilson contacted Lone Star Trucking, the trucking company that had moved the deicer for FedEx. The driver who handled the move informed Wilson that the height of the load had been below the required 13' 6" height, and that he had not had impact with any object during the transport.

Wilson conducted a pre-decision telephone call to allow plaintiff to provide any factual information that related to the disciplinary issue. In a written statement dated May 23, 2006, plaintiff explained:

> When I PMed this unit I had to go out to the frt. Parking lot and move
> some dollies that were in front of it to bring it to the shop to only look over
> because this unit was not used at our location.  I ran the frt.  And rear
> motor and also took the boom to the full up position.  I did a dry PM
> because this unit was not used here at all.  I walked on the upper boom
> and there was absolutely no damage what so ever.

Upon review of all the information available including the PM sheets filled out by plaintiff, the report by Tompkins and Clark, the photographs, the information from the trucking company, plaintiff's written statement and the pre-decision telephone call, Wilson decided that plaintiff could not have conducted the preventative maintenance inspection as he represented on the PM sheets.  Accordingly, Wilson concluded that plaintiff had falsified company documents, and he terminated plaintiff's employment for "violation of the Acceptable Conduct Policy P2-5, specifically, falsification of Company documents (PM Inspection Documentation)."

Plaintiff's termination letter stated that if he believed the employment action was unfair, he could enter into FedEx's GFTP process.

On August 6, 2006, plaintiff challenged his termination pursuant to the GFTP. Step 1 of the GFTP is management review.  A manager, senior manager or managing director must, within ten days of receipt of the employee complaint, hold a telephonic conference or meeting with the employee and make a decision to uphold, modify or overturn management action.

FedEx assigned Musgrove to conduct the Step 1 review.[3]  Plaintiff submitted a written statement and statements from other FedEx employees, including Ken Lessard,

---

[3]Prior to conducting the review, Musgrove had not had substantial interaction with plaintiff.

6

concerning the deicer's condition prior to transport. Musgrove conducted a telephonic conference with plaintiff, Wilson and Holly Harris, a FedEx human resources representative. Musgrove also asked Wilson to find out the direction that the deicer was loaded by the transport company and whether the boom was tied down. After review of the factual record, Musgrove upheld the management decision to terminate plaintiff's employment.

On August 22, 2006, plaintiff requested Step 2 review of his termination under the GFTP. At this step, a vice president or senior vice president reviews all relevant information; conducts additional investigation if necessary; obtains technical support from HR Compliance, the legal department and matrix human resources if necessary; and decides whether to uphold, overturn or modify management's action or initiate a Board of Review.

Formisano conducted the GFTP Step 2 review. He had never met plaintiff prior to conducting this review. As part of the Step 2 review, plaintiff submitted a written statement and additional employee statements. Formisano conducted a teleconference with plaintiff on September 5, 2006. During this teleconference, plaintiff expressed a concern that Musgrove failed to interview individuals who had relevant information concerning the deicer's condition in April. As a result, Formisano instructed Musgrove to contact Ken Lessard, Roger Chalmers and Ronald Lanigan, all of whom plaintiff had identified during the teleconference with Formisano.[4] In a memo dated

---

[4]According to the HR Compliance Analysis completed for the Appeals Board in Step 3 of plaintiff's appeal, Musgrove was unable to contact Jeff Corbin and another Technician whom plaintiff identified as having information did not want to give a statement regarding the condition of the deicer

September 6, 2006, Musgrove provided Formisano with a summary of his discussions with these individuals. He wrote:

> Ken Lassard outlined as outlined in his statement in the GFTP file, he used the Deicer on April 14 to get on the roof to make repairs to the satellite dish. He stated that he has used the deicer in the past to change light bulbs but it was over one year ago. He did not cycle the deicer or swing it from stop to stop since their [sic] was not a need. . . .
>
> ***
>
> Rodger Chalmers saw Ken Lessard use the deicer to get on the roof some time in April. Rodger stated that Ken startled him because he went up right in front of his window.
>
> ***
>
> Ron Lanigan stated as in his statement in the file that he went out to the deicer to make sure no equipment was on it. Ron stated that he did not see any damage to the unit. He could not remember if in fact he walked along the top of the unit.

Formisano reviewed the written materials that were included as part of the Step 1 review, the additional materials that plaintiff included with his Step 2 request, and Musgrove's memo dated September 6. He concurred that the preventative maintenance could not have been completed in the manner reflected by plaintiff's PM sheets. Accordingly, he affirmed the termination decision.

On September 15, 2006, plaintiff sought review under Step 3 of the GFTP. At this step, a Human Resources Compliance employee must investigate and prepare the case for the Appeals Board. The Appeals Board reviews all relevant information and makes a decision to uphold, modify or overturn the employment decision.

As part of Step 3, plaintiff submitted a written statement and additional supporting documents. A FedEx Human Resources representative contacted plaintiff to obtain his version of the events.

The Appeals Board upheld the decision to terminate plaintiff's employment.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc., 664 F.2d at 351.  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson, 477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

9

Defamation

Plaintiff asserts that defendants FedEx, Wilson, Musgrove and Formisano are liable to him based on defamation per se.  Specifically, he maintains that the written employment decision to terminate him and the subsequent affirmations of that decision are defamatory because these decisions state that he falsified records.

A defamatory statement is a communication that tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.  Gambardella v. Apple Healthcare, Inc., 291 Conn. 620, 627 (2009).  To establish a prima facie case, plaintiff must demonstrate that (1) defendants published a defamatory statement; (2) the defamatory statement identified plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) plaintiff's reputation suffered injury as a result of the statement.  Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217 (2004).  Thus, a plaintiff claiming defamation must prove that a defendant published a false statement that harmed the plaintiff, and that defendants were not privileged to make such statements.  Kelley v. Bonney, 221 Conn. 549, 563 (1992).

In Connecticut, intracorporate communications made in the context of employment decisions enjoy a qualified privilege.  Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 29 (1995).   However, a showing that the statements were made with actual malice or malice in fact will overcome the privilege. Gambardella, 291 Conn. at 634.  As Gambardella explains, actual malice is the publication of a false statement with knowledge of its falsity or reckless disregard for its truth, and malice in fact is the publication of a false statement with bad faith or improper

10

motive. A defendant must have purposefully avoided the truth, and negligence does not satisfy the malice standard. Hopkins v. O'Connor, 282 Conn. 821, 846 (2007).

Here, plaintiff relies upon the defendants' intracorporate communications relevant to the finding that plaintiff had falsified company documents. Accordingly, plaintiff must show that the alleged defamatory statements were made with actual malice or malice in fact.

Plaintiff asserts that the decisions to terminate him and to affirm his termination were based upon flawed investigations of the evidence. Plaintiff's claim of malice stems from his assertion that defendants failed to consider evidence that several witnesses, such as Ken Lessard, observed the deicer as a functioning unit prior to its transport to Mobile. However, the fact that the deicer was functioning prior to its transport does not raise an inference that defendants had purposefully avoided any truth regarding plaintiff's pre-transport inspection of the equipment. The finding of falsification was based on Tompkins's and Clark's documentation of certain damage and deficiencies including old, black oil and extensive rust indicating that the deicer had not been subject to a PM inspection for a long period of time.

During Step 2, defendant Musgrove did interview witnesses as requested by plaintiff, and defendant Formisano reviewed the summary of the interviews provided by Musgrove. Without evidence indicating that defendants purposefully avoided the truth, plaintiff cannot overcome the intracorporate communication privilege. The Court will grant summary judgment in defendants' favor on this claim.

<u>Tortious Interference with Employment Relations</u>

Plaintiff alleges that defendants Wilson, Musgrove and Formisano "sought to interfere with his business relationship with FedEx for improper reasons and/or reliance on improper means." Defendants argue that they cannot be liable for tortious interference with employment relations because they are employees of defendant FedEx, and they were acting within the scope of their authority.

A claim of tortious interference requires that: (1) a contract or beneficial relationship exists; (2) defendant has knowledge of that relationship; (3) defendant intended to interfere with that relationship; and (4) plaintiff suffered an actual loss as a result of that interference. <u>Hart, Nininger and Campbell Assoc., Inc. v. Rogers</u>, 16 Conn. App. 619, 629 (1988). To prevail, plaintiff must prove that defendants committed tortious conduct such as fraud, misrepresentation, intimidation or acted maliciously. <u>Solomon v. Aberman</u>, 196 Conn. 359, 365 (1985).

An agent acting within the scope of his or her authority cannot be held liable for interference with a contractual relationship. <u>Boulevard Assocs. v. Sovereign Hotels, Inc.</u>, 72 F.3d 1029, 1036 (2d Cir. 1995). "An employee acts within the scope of his employment as long as he is discharging his duties or endeavoring to do his job, no matter how irregularly, or with what disregard of instructions." <u>Harp v. King</u>, 266 Conn. 747, 786 (2003). To determine the scope of employment, courts consider whether the conduct (1) occurs primarily within the employer's authorized time and space limits; (2) is the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer. <u>Id.</u> at 783.

In this instance, the evidence evinces no inference that the individual defendants

were not acting to discharge their duties when they found that plaintiff had falsified the PM sheets.  Accordingly, the motion for summary judgment will be granted in defendants' favor on this claim.

	Promissory Estoppel

	Plaintiff alleges that "the FedEx Guaranteed Fair Treatment Policy was a promise that if he should be terminated, the Defendant FedEx would permit him to appeal the termination and, through a fair process consisting of a three step internal review, provide him with the opportunity to demonstrate that the reason for the termination was untrue and that he was entitled to be reinstated."

	The elements of promissory estoppel are: (1) a clear and definite promise which a promisor could reasonably have expected to induce reliance; (2) the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (3) the other party must change its position in reliance on those facts, thereby incurring some injury.  Torrington Farms Ass'n. v. Torrington, 75 Conn. App. 570, 576 n.8 (2003).

	In order to be binding, the promise must be clear and definite and must contain the material terms that are essential to the formation of a contract.  D'Ulisse-Cupo v. Board of Dir. of Notre Dame High Sch., 202 Conn. 206, 213 (1987).  The promise need not be the equivalent of an offer to enter into a contract, but a "mere expression of intention, hope, desire, or opinion, which shows no commitment, cannot be expected to induce reliance and, therefore, is not sufficiently promissory."  Stewart v. Cendant Mobility Servs. Corp., 267 Conn. 96, 105 (2003).  In D'Ulisse-Cupo, the Connecticut Supreme Court found as insufficiently promissory or definite an employer's statements

that "everything looked fine for the next year," a notice on the school bulletin board stating that "all present faculty members would be offered contracts for next year," and a statement by the employer to the employee that she would have a contract for the following year. The Court explained that these statements lacked the requisite material contractual terms such as duration and salary, and that absent these terms, the statements were "no more than representations indicating that the defendants intended to enter into another employment contract with the plaintiff at some time in the future."

Oski's promissory estoppel claim fails because he cannot prove a clear definite promise that he should reasonably have relied upon. FedEx's People Manual provides that:

> <u>It is not a contract of employment, and no such contract may be implied from its provisions.</u> Nothing in this manual shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party. The provisions of this manual may be modified amended or deleted by the Company at any time at its sole discretion without prior notice.

The Handbook acknowledgments provided that it contained guidelines and did not constitute a contract, and that FedEx could "modify this publication by amending or terminating any policy, procedure or employee benefit program at any time."

Thus, the People Manual and Handbook lacked clear and definite terms that plaintiff could reasonably have relied upon as he has alleged in his complaint. Further, plaintiff has adduced no evidence that FedEx did not allow him to appeal the termination and provide him an opportunity to refute the decision. There exists no inference of fact that defendants did not satisfy the GFTP process. Summary judgment will be granted in FedEx's favor on this claim.

## **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment [doc. #43] is GRANTED.  The clerk is instructed to close this case.

Dated this   6th   day of October, 2009 at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE